#25278-rev & rem-SLZ

**2010 SD 11**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

* * * *

BRYAN LOCKE AND BENJI LOCKE,    Plaintiffs and Appellants,

v.

LONALD L. GELLHAUS,      Defendant and Appellee.

* * * *

APPEAL FROM THE CIRCUIT COURT OF
THE FIFTH JUDICIAL CIRCUIT
BROWN COUNTY, SOUTH DAKOTA

* * * *

HONORABLE SCOTT P. MYREN
Judge

* * * *

RONALD A. PARSONS, Jr.
SCOTT A. ABDALLAH of
Johnson, Heidepriem,
  Abdallah & Johnson, LLP
Sioux Falls, South Dakota
and
MARK W. McNEARY
Aberdeen, South Dakota     Attorneys for plaintiffs
           and appellants.


ROY A. WISE
ZACHERY W. PETERSON of
Richardson, Wyly, Wise, Sauck,
  & Hieb, LLP
Aberdeen, South Dakota     Attorneys for defendant
           and appellee.

* * * *

ARGUED NOVEMBER 17, 2009

OPINION FILED **02/03/10**

#25278

ZINTER, Justice

[¶1.]        A pedestrian was injured when a concrete-filled metal grate in a city sidewalk collapsed. The grate covered a no longer used excavation that was originally a stairwell to the basement of an abutting building. The pedestrian and his wife sued the current building owner for negligence and loss of consortium. The circuit court granted summary judgment in favor of the building owner. The court concluded that because the city sidewalk had been rebuilt by the building owner at the direction of the city in accordance with city specifications, the city rather than the building owner owed the duty of care to the public for maintenance of the sidewalk. We conclude that an excavation/grate is a "special use" of a sidewalk. We further conclude that when an abutting property owner creates or maintains a special use, the property owner owes a duty of due care to the public with respect to that special use. We finally conclude that the abutting property owner's duty with respect to special uses is concurrent with any duties that may also be owed by cities. Therefore, we reverse and remand.

*Facts and Procedural History*

[¶2.]        In 1984, Lonald Gellhaus and a partner purchased the building located at 112 South Lincoln Street in Aberdeen (City). According to the original plat of the City, this street, which included the sidewalk, was dedicated to the public. City accepted the street and has at all relevant times owned the sidewalk in front of Gellhaus's building.

[¶3.]        The building was constructed in 1909 as a hotel, with office space on the ground floor and the lower basement level. Originally, there were stairwells in

-1-

the front of the building. The stairwells were excavated into the sidewalk so the public could access shops in the basement. The stairwells also provided a natural light source for the basement.

[¶4.] As early as 1897, City began regulating sidewalks. An 1897 ordinance determined "the kind of material of which [the sidewalks] shall be constructed." Ordinances in 1906 and 1909 determined the width of the sidewalk. Ordinances from 1897 through 1909 specifically allowed private excavation into City's sidewalk for the purpose of creating stairways leading to cellars or basements in abutting buildings.

[¶5.] By 1924, City changed its policy and prohibited abutting property owners from making new excavations except for certain purposes, and then only if "covered with suitable iron covers, iron grating, or glass set in iron or cement [sic]." A landowner covering a permissible excavation was required to obtain a permit from the City Engineer. By 1954, City prohibited existing openings in sidewalks. An ordinance provided that no permanent openings could "be made or maintained in any sidewalk in any of the public streets of the City of Aberdeen for the purpose of stairways leading to any basement or cellar" unless covered as specified in the ordinance. At some time prior to 1968, this excavation was covered by the concrete-filled metal grate at issue. It is not known who covered the excavation with the grate.

[¶6.] In 1968, City "deem[ed] it necessary to repair or rebuild the concrete sidewalks in front of and abutting upon" 150 downtown properties, including the Gellhaus property. The 1968 ordinance required the abutting owners to "repair or

rebuild at their own cost and expense cement [sic] sidewalks in front of and abutting" their properties. The owners were required to repair or rebuild using "Portland cement concrete in accordance with the City Ordinance and under the supervision of the City Engineer." City notified the property owners that if these improvements were not made within the time specified, City would perform the work and assess the costs against the property owner. It is unknown whether the building owner at that time or City performed the work. For purposes of summary judgment, Gellhaus conceded that his predecessor rebuilt the sidewalk.

[¶7.]      The evidence indicates that the concrete-filled metal grate was in place at the time of the 1968 reconstruction. During that reconstruction, the excavation was not filled, and the concrete-filled grate remained a part of the reconstructed sidewalk. Further, Lockes do not take issue with the circuit court's observation that: "When the sidewalk was reconstructed in 1968, it would have had to have been constructed in a way that conformed to the City's specifications. . . . I did not find any evidence . . . that the sidewalk . . . was constructed in a manner that was not consistent with the City's specifications."

[¶8.]      After purchasing the building in 1984, and up to the time of the accident in 2003, Gellhaus did not fill the excavation. Although the windows in the basement were covered and the subspace under the grate was no longer used, a door in the building allowed access to the subspace. Additionally, although Gellhaus noticed the concrete in the grate "had worn to some extent," he did not inspect the grate or perform any repair or maintenance. There is also no evidence that City notified Gellhaus of a defect or that he should repair or replace the grate.

[¶9.]     On July 24, 2003, Bryan Locke was standing on the sidewalk in front of Gellhaus's building, which housed a probation office on the first floor. Locke, a deputy sheriff, was about to knock on the window to get the attention of a probation officer. Almost immediately after Locke stepped onto the grate covering the excavation, the grate collapsed. Locke fell approximately nine feet into the subspace and was seriously injured.

[¶10.]     Following discovery, Gellhaus moved for summary judgment. Gellhaus argued that because the 1968 reconstruction was required to be completed in accordance with City specifications, City became liable to the public for the manner in which the sidewalk had been reconstructed and maintained with the grate covering the excavation. The circuit court agreed holding that following the 1968 reconstruction, the duty of due care became City's obligation rather than Gellhaus's. The court explained:

> [When the City] said [by the 1924 and 1954 ordinances], okay, you can build your stairway but now you can't have it anymore, removes the responsibility of the landowner when the City also at the same [time under 1968 ordinance], or shortly thereafter said, you have to rebuild the sidewalk and you have to do it up to our specifications. So when . . . they required the landowner to rebuild it or would rebuild it themselves in 1968, they undertook the responsibility to make sure that it was up to specifications. And if they wanted the hole filled in, they should have filled it in or had it filled in. And when they accepted the sidewalk without getting it filled in, they also accepted responsibility for the sidewalk without the hole being filled in, and it became their duty after that.

The court concluded:

> The abutting landowner is entitled to rely on the [statutes and case law allocating liability between cities and nonresident abutting landowners]. And the law says that if you construct the sidewalks in conformance with the City's requirements,

-4-

> which is shown by the fact that the City accepted it or didn't
> give you notice that you had to fix it better, that you don't have
> to worry about the sidewalk [because the City then retains the
> maintenance duty].

*Decision*

[¶11.] Before a defendant can be held liable for negligence, the defendant must have breached a duty of care owed to the plaintiff. Kryger v. Dokken, 386 NW2d 481, 483 (SD 1986). The question in this case is whether a city, an owner of property abutting a city sidewalk, or both owe a duty of care to the public for maintenance of a city sidewalk covering an excavation that had been previously made for the benefit of the abutting property owner's building, when the sidewalk had been reconstructed at city direction pursuant to city specifications. "The existence of a duty in a negligence action is a question of law subject to de novo review by this Court." Kirlin v. Halverson, 2008 SD 107, ¶ 10, 758 NW2d 436, 444 (citations omitted). We begin our analysis by examining the statutory and common-law duties of cities and landowners relating to city sidewalks.

[¶12.] *Rapid City v. First Nat'l Bank of the Black Hills,* 79 SD 38, 107 NW2d 693 (1961), discussed both city and landowner statutory and common-law duties.[1] *First Nat'l Bank* involved a Rapid City resolution analytically identical to the 1968 Aberdeen City ordinance under which Gellhaus's predecessors were required to rebuild or repair the sidewalk in accordance with City specifications. We stated that the predecessor to SDCL 9-46-2, authorizing cities to require abutting

---

1. Although *First Nat'l Bank,* 79 SD 38, 107 NW2d 693, involved a statutory indemnity claim by Rapid City against an abutting landowner, our discussion of the common-law duties of cities and abutting property owners was not limited to statutory indemnity claims.

landowners to repair city sidewalks, created a limited exception to the common-law rule that landowners generally had no duty to the public. We concluded that the statute created a limited duty making "abutting owner secondarily liable *to the municipality* for damages caused by the owner's failure to repair."[2]  *Id.* at 43, 107 NW2d at 695 (emphasis added). The result was that under this statutory exception, ultimate liability for damages caused by defective sidewalks was shifted from the city to the abutting landowner, but only when the city gave notice[3] and the landowner failed to make the requested repair. *Id.*

---

2.     SDCL 9-46-2 provides in relevant part:

> Any owner of real property who fails to keep in repair the sidewalks in front of or along such property if he resides thereon, or if he does not reside thereon, to repair the same forthwith when notified, *is liable to the municipality for any damage caused by such neglect.*

(Emphasis added.)  *First Nat'l Bank* also discussed the predecessors to SDCL 9-46-3, 9-46-4, and 9-46-5. These statutes authorize cities to "require abutting owners to construct, rebuild, or repair sidewalks adjacent to their property and provide a procedure for assessing the cost against owners when the work is done by the municipality," but unlike SDCL 9-46-2, do not have language making the landowner liable to the municipality for a failure to repair. *First Nat'l Bank,* 79 SD at 42-43, 107 NW2d at 695.  Therefore, we stated that according to the great weight of authority, "liability is not imposed [under SDCL 9-46-3, 4, and 5] upon the abutting owner, either to travelers or to the City, for injuries caused by a defective walk." *Id.*  Finally, and most significant to this appeal, we did not conclude that any of these four statutes altered the common-law rule imposing on abutting landowners a duty to the public for excavations and other artificial conditions (special uses) in city sidewalks. *See infra* ¶ 15.

3.     Gellhaus points out that he was not given the statutorily required notice to repair the defect in the concrete-filled grate. Therefore, he argues that he cannot be liable. However, Lockes do not allege a violation of the duty arising under SDCL 9-46-2, which only envisions a landowner's secondary, statutory liability *to a city*. Lockes allege a violation of the non-statutory,

(continued . . .)

[¶13.]     Gellhaus focuses on the language in *First Nat'l Bank* that, in interpreting SDCL 9-46-2's predecessor, provided an owner is "*secondarily* liable to a *municipality* for any damages caused by the owner's failure to repair [the sidewalk in front of his property.]"  79 SD at 43, 107 NW2d at 695 (emphasis added).  Based on this emphasized language, Gellhaus argues Lockes must first proceed against City, and then City must pursue an indemnification claim against Gellhaus.  Gellhaus's argument is misplaced for two reasons.

[¶14.]     First, we found secondary liability under SDCL 9-46-2 in *First Nat'l Bank* only because that landowner failed to make a repair that was directed by Rapid City.  In this case, the parties agree that Gellhaus's predecessors reconstructed the sidewalk in accordance with the 1968 ordinance directing abutting owners to repair or rebuild the sidewalks.  Because Gellhaus did not fail to repair a defect as required by the 1968 ordinance, secondary liability under SDCL 9-46-2 does not arise.  Further, even if Gellhaus were secondarily liable under SDCL 9-46-2 for a failure to comply with a notice to repair a defect, *Budahl v. Gordon and David Assoc.*, 323 NW2d 853, 854 (SD 1982), recognized that these

---

(. . . continued)

      common-law landowner duty to the public to maintain excavations and other artificial conditions (special uses) that are created or maintained by the landowner.  Therefore, compliance with the notice prerequisite for statutory indemnity claims by a city under SDCL 9-46-2 is irrelevant in this case.  Further, "[t]he rule has . . . long been that for 'an abutting property owner who comes within the specific benefit [i.e., the excavation and artificial condition] rule,' notice is not required for liability to attach."  O'Brien v. Christy, 14 Misc2d 1069, 1071, 539 NYS 2d 657, 658-59 (NYSupCt 1989) (citing Clemmons v. Cominskey, 149 NYS 2d 559, 1 AD2d 933, 934 (NYAppDiv 1956)).

types of "enactments . . . are intended to make the actor responsible to the [city], rather than to any individual[.]" Thus, Lockes have no claim under SDCL 9-46-2. They seek to recover under a common-law theory of liability for special uses. For both reasons, Lockes need not first proceed against City under a secondary, statutory duty theory. Because this statutory duty does not apply to Lockes's claim, we next determine whether Gellhaus owed any duty to Lockes under the common law.

[¶15.]     *First Nat'l Bank* also controls the common-law duty question. In addition to discussing an abutting landowner's statutory duties, *First Nat'l Bank* set forth the common-law duties landowners not residing on the premises owe the public regarding maintenance of abutting city sidewalks. We, like most other courts, concluded that cities, rather than abutting landowners, owe the duty of keeping city sidewalks reasonably safe for the public. An abutting owner's duty to the public arises only when the owner creates or maintains an excavation or other artificial condition on the sidewalk. We stated:

> A municipality has full and complete control over the public sidewalks within its corporate limits. Consequently, a municipality is charged with the affirmative duty of keeping its sidewalks in a reasonably safe condition for public travel, and is liable for injuries caused by its neglect. Conversely, as there is no common-law duty resting upon the owner or occupant of land abutting upon a public walk to keep or maintain the same in repair there is no corresponding liability to the general public *except when such owner or occupant creates or maintains an excavation or other artificial condition on the sidewalk which causes or contributes to an injury.*

*First Nat'l Bank,* 79 SD at 39-40, 107 NW2d at 694 (emphasis added) (citations omitted). *See also* Zens v. Chicago, Milwaukee, St. Paul & Pacific R.R. Co., 386

NW2d 475, 479 (SD 1986) (restating the common-law rule and exception recognizing a limited special use duty).

[¶16.]     Lockes rely on this common-law exception, more generally known as the "special use" doctrine. Summarizing the cases, the special use doctrine has been described as follows:

> If the abutter makes special use of the sidewalk, he or she owes a duty to maintain it in a reasonably safe condition for pedestrians lawfully using it, and must exercise reasonable care to guard the public from injury. If the abutter does not, he or she becomes liable to any persons injured as a proximate result of his or her negligence. The abutter's liability for negligence is not affected by the fact that the municipality has a duty to perform and may also be liable[.] . . . Liability results from the fact that the abutter creates or maintains the thing from which the injury results, and not because he or she owns the abutting property.

19 McQuillin, *The Law of Municipal Corporations*, § 54:69 (3rd ed 2009).

[¶17.]     Gellhaus does not argue that the special use doctrine has not been adopted in this jurisdiction. Instead, he argues that notwithstanding the doctrine, City became responsible for the sidewalk because of the 1954 ordinance "revoking" authority to maintain excavations and the 1968 ordinance requiring reconstruction. Gellhaus stresses that City dictated the specifications for the 1968 reconstruction that incorporated the grate. Gellhaus contends that after the sidewalk was rebuilt pursuant to City's specifications that apparently permitted the grate in the sidewalk, no duty "can follow" to Gellhaus because City "dictated how the openings would be handled." Gellhaus's argument is correct to the extent he asserts that as a result of the 1968 reconstruction, *City* owed a duty of care to Lockes with respect to the concrete-filled metal grate that was expressly or implicitly authorized by City.

Gellhaus, however, cites no authority suggesting that the imposition of this duty on City *extinguished concurrent* duties Gellhaus owed for his creation or maintenance of a special use.

[¶18.]     Contrary to Gellhaus's argument, the special use duty is not extinguished because a city may also be liable.  If the owner of a lot abutting a street of a municipality, for the use of his property, constructs a vault under the sidewalk over which he negligently places and maintains a defective covering, he is liable to one who is injured thereby, "notwithstanding the omission by the municipality of the duty imposed upon it by statute to keep the street in repair." Herron v. City of Youngstown, 136 OhioSt 190, 194, 24 NE2d 708, 710-11 (1940). *See also* Lee v. City of Baton Rouge, 243 La 850, 147 So2d 868 (1963) (concluding that where both a city's and abutting property's negligence were alleged to have proximately caused an injury on a sidewalk, both could be held liable).  As *McQuillin* succinctly summarizes:  "The abutter's liability for negligence is not affected by the fact that the municipality has a duty to perform, and may also be liable[.]"  19 McQuillin, *The Law of Municipal Corporations,* § 54:69.  The Minnesota Supreme Court explained why, irrespective of the city's duty, both the city and the property owner owe a duty to the public when a special use exists on a public sidewalk.

> [B]oth a municipality maintaining public walks and the owner of [the] property adjoining them are liable for injuries sustained by reason of defective entryways, coalholes, or other facilities placed therein for the convenience of the building owner, where such defects are due to the owner's negligence.  The owner is liable because of his creation of the dangerous condition, and the municipality is liable because of its neglect to use due care to keep the public walks in a reasonably safe condition.

Pagett v. N. Elec. Supply Co., 283 Minn 228, 232-33, 167 NW2d 58, 62 (1969).[4] We conclude that City's and Gellhaus's duties are concurrent, and therefore, neither the 1954 and 1968 ordinances nor the reconstruction extinguished Gellhaus's duty to the public with respect to a special use. The final question is whether Gellhaus's excavation/subspace was a special use.

[¶19.]     "The special use doctrine applies only if the sidewalk was specifically constructed in a special manner for the benefit of the abutting landowner." Guadagno v. City of Niagara Falls, 832 NYS2d 732, 733, 38 AD3d 1310, 1311 (NY AppDiv 2007) (citing Kaufman v. Silver, 90 NY2d 204, 207, 681 NE2d 417, 419 (NY 1997); Minott v. City of New York, 645 NYS2d 879, 880-81, 230 AD2d 719, 720 (NY AppDiv 1996))). A special benefit is an accommodation that allows the abutting landowner to use the sidewalk in a manner different than the general public. The benefit relates to the abutting property owner rather than the public.

> Under the special use doctrine, the defendants may be held liable if [plaintiff] can show that . . . the sidewalk was constructed in a special manner for the defendants' benefit. . . .
>
> "Special use cases usually involve the installation of some object in the sidewalk or street *or some variance in the construction thereof*," such as the installation of rails in the sidewalk to facilitate the removal of refuse, the placement of a protruding pipe for heating oil, or the installation of a driveway cut-out. Thus, all special use cases involve *an accommodation that allows the adjoining landowner to use the sidewalk "in a manner different from that of the general populace*." As the Court of

---

4.    *Pagett* and the cases discussed therein either expressly involved or assumed that landowner liability to the public exists when the special use exception applies. *See Pagett*, 283 Minn at 236, 167 NW2d at 64; Callahan v. City of Virginia, 230 Minn 55, 58, 40 NW2d 841, 842 (1950); Wabasha v. Southworth, 54 Minn 79, 55 NW 818 (1893).

Appeals has recently stated: "[t]he special use exception is reserved for situations where a landowner whose property abuts a public street or sidewalk derives *a special benefit from that property unrelated to the public use*, and is therefore required to maintain a portion of that property."

Moore v. United States, 882 FSupp 1297, 1299 (ED NY 1995) (emphasis added) (citations omitted). *See also* Balsam v. Delma Eng'g Corp., 532 NYS2d 105, 109, 139 AD2d 292, 298 (NY AppDiv 1988).

[¶20.] We conclude that the subspace/excavation was a special use because: (1) the excavation was put into the sidewalk "for the convenience of the abutting property owner [Gellhaus's predecessors in interest,]" *see Pagett,* 283 Minn at 233, 167 NW2d at 62; (2) the cover for the excavation was a "variation in construction of the sidewalk" and an "accommodation" that allowed Gellhaus to maintain the excavation without filling it in, which in turn afforded him a use of the sidewalk "in a manner different from that of the general populace[,]" *see Moore,* 882 FSupp at 1299; and, (3) Gellhaus's ability to maintain the excavation under the public sidewalk using a cover allowed him to receive a "benefit from that property unrelated to the public use[,]" *see id.* Simply stated, the excavation and cover were not constructed for the benefit of the public. They were constructed for the benefit of the abutting property owner. Our conclusion today is in accord with this Court's prior observation that "excavations" are special uses creating a duty on the part of the abutting landowner. *See First Nat'l Bank,* 79 SD at 40, 107 NW2d at 694; *Zens,* 386 NW2d at 479.

[¶21.] With respect to the question of the creation or maintenance of the special use, we find *Pagett,* 283 Minn 228, 167 NW2d 58, instructive. In that case

the landowner argued that it had no duty to maintain a cover over an abandoned subspace under a municipal sidewalk because the property owner "did not create the [abandoned subspace], [and] did not use the facility or receive any benefits from it[.]" *Id*. at 233, 167 NW2d at 62. Like Gellhaus, that landowner also argued that it had no duty because the municipality had "the obligation to maintain the public sidewalk in proper condition." *Id*. The Minnesota Supreme Court rejected these arguments, adopting the trial court's conclusion that "responsibility was placed on the owner of the abutting premises and that use of the [subspace was] immaterial as [a] defendant cannot relieve himself from responsibility by abandoning the hole."[5] *Id*. at 233-34, 167 NW2d at 62 (citing City of Wabasha v. Southworth, 54 Minn 79, 55 NW 818 (1893)). It is sufficient that the landowner "maintained [the excavation] in the street by allowing it to remain there, with knowledge of its existence." *Wabasha*, 54 Minn at 88, 55 NW at 818. In this case Gellhaus had knowledge of the excavation's existence, and he allowed the excavation and cover to remain a part of the sidewalk. In doing so, he maintained the excavation/subspace and cover. Further, there is no dispute that Gellhaus's predecessors in interest created the excavation.

---

5. *McQuillin* also collects authorities concluding that "where a cellarway, trapdoor, coalhole or the like is put into a public sidewalk for the convenience of the abutting property owner, the duty of maintaining it in a safe condition, as between the owner and City, devolves upon the owner, who cannot release himself of this duty merely by abandoning the use of the structure." *McQuillin*, *supra*, § 54:128 (citing *Pagett, supra*, Lodato v. Town of Oyster Bay, 414 NYS2d 214, 68 AD2d 904, (NYAppTerm 1979), Lombardozzi v. City of New York, 71 Misc2d 271, 335 NYS2d 907 (NYAppDiv 1972)).

[¶22.]     We therefore hold that Gellhaus, as the abutting property owner, created or maintained a special use creating a concurrent duty of care to the public regarding maintenance of the excavation and the grate.  *See* O'Brien v. Christy, 142 Misc2d 1069, 1071, 539 NYS 2d 657, 658 (NYSupCt 1989) (concluding that a "special benefit" to the landowner existed imposing liability on the landlord when a sidewalk that covered an underground vault collapsed); Dodson v. New England Trust Co., 78 OhioApp 503, 510-11, 71 NE2d 503, 507 (1946) (concluding that abutting owner of real estate connected to an abandoned subspace under a public sidewalk was liable to pedestrians under special use doctrine).  The issues of breach of duty, causation, and damages remain for a jury.  Reversed and remanded for further proceedings consistent with this opinion.

[¶23.]     GILBERTSON, Chief Justice, and KONENKAMP, MEIERHENRY, and SEVERSON, Justices, concur.