#26516-aff in pt, rev in pt & rem-SLZ

**2013 S.D. 62**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

\* \* \* \*

| | |
|---|---|
| EDNA F. PATITUCCI and ANTHONY J. PATITUCCI, | Plaintiffs and Appellants, |
| v. | |
| CITY OF HILL CITY and GRANITE SPORTS, INC., | Defendants and Appellees. |

\* \* \* \*

APPEAL FROM THE CIRCUIT COURT OF
THE SEVENTH JUDICIAL CIRCUIT
PENNINGTON COUNTY, SOUTH DAKOTA

\* \* \* \*

THE HONORABLE JANINE KERN
Judge

\* \* \* \*

JON J. LAFLEUR of
Abourezk & Zephier, PC
Rapid City, South Dakota

Attorneys for plaintiffs
and appellants.

KYLE L. WIESE
JAMES S. NELSON of
Gunderson, Palmer, Nelson
  & Ashmore, LLP
Rapid City, South Dakota

Attorneys for defendant and
appellee City of Hill City.

JEFFREY R. CONNOLLY
J. CRISMAN PALMER of
Gunderson, Palmer, Nelson
  & Ashmore, LLP
Rapid City, South Dakota

Attorneys for defendant and
appellee Granite Sports, Inc.

\* \* \* \*

ARGUED ON MAY 21, 2013
OPINION FILED **08/14/13**

ZINTER, Justice

[¶1.]		Edna Patitucci was injured while walking on a sidewalk abutting Granite Sports, Inc. (Granite Sports), a sporting goods store in Hill City (City). The sidewalk also abutted a state/federal highway, which is the City's main street. Edna and her husband sued the City and Granite Sports for negligence. The circuit court granted summary judgment for both defendants, ruling that neither owed a duty of care relating to the sidewalk. Patituccis appeal. We reverse the summary judgment granted in favor of the City and affirm the summary judgment granted in favor of Granite Sports.

*Facts and Procedural History*

[¶2.]		On August 21, 2009, Edna fell and fractured her wrist while walking on a split-level sidewalk in Hill City. The sidewalk abutted Granite Sports, which is located on U.S. Highway 16/385. The highway extends through the City as its main street. The upper sidewalk, which abutted businesses on the highway, was constructed by the State of South Dakota approximately sixty years ago. From 1995 to 1997, the State reconstructed the highway in the City. The upper sidewalk was not included in the reconstruction project. However, a curb and a narrow lower sidewalk were added at street level. This created a split-level sidewalk at various locations. There was an approximate six-inch difference in elevation between the upper sidewalk and lower sidewalk where Edna fell.

[¶3.]		In August 2011, Edna and her husband sued the City and Granite Sports. They alleged negligence in failing to eliminate or reduce the risk of injury associated with the split-level sidewalk.

[¶4.]     The City moved for summary judgment.  It argued that it owed no duty to the Patituccis because it contended that it did not design, build, maintain, control, or own the sidewalk.  The City contended that the State, through the Department of Transportation, designed, built, and controlled the sidewalk, which was within the highway right-of-way.  The City relied on the affidavits of Brett McMacken, the City's administrator, and Art Anderson, the City's public works superintendent.  McMacken indicated that the sidewalk was built and designed by the State at least sixty years ago, and both he and Anderson asserted that the sidewalk was controlled by and under the authority of the State.

[¶5.]     Patituccis argued that the City controlled the sidewalk.  Patituccis relied on a number of statutes authorizing municipalities to construct, improve, and control sidewalks within the municipality.  Patituccis also contended that the City's control was demonstrated in a 1994 "maintenance and encroachment" agreement between the City and the State, as well as in the City's council meeting minutes and a City resolution relating to improvement of the sidewalk.

[¶6.]     Granite Sports argued that it also owed no duty to the Patituccis.  Granite Sports relied on an affidavit from its owner, Pat Wiederhold.  He indicated that Granite Sports did not design, construct, or control the sidewalk.  Granite Sports also pointed out that, as a business abutting a sidewalk, its duty was limited.  And Granite Sports contended that it had no limited duty because its owner did not reside on the business premises, the City did not give Granite Sports notice that the sidewalk was in need of repairs, and Granite Sports did not alter or modify the sidewalk.

[¶7.] Patituccis, however, argued that Granite Sports could be secondarily liable to the City for damages under SDCL 9-46-2 if the City were found liable. Patituccis contended that it was necessary for Granite Sports to remain in the suit as a procedural matter because "[t]he City will cross-claim against Granite Sports, Inc. if it is determined that the City owed a duty to [Edna] to keep its sidewalk safe."

[¶8.] The circuit court granted summary judgment for the City and Granite Sports. The court reasoned that neither defendant controlled the sidewalk. The court noted that "the location where Edna . . . fell is located within the . . . State's highway right-of-way[.]" Relying on the affidavits of McMacken, Anderson, and Wiederhold, the court also noted that "the [C]ity did not design, construct or control the sidewalk and . . . the extent of Granite [Sports'] maintenance of the sidewalk in front of the store [was] snow removal and removal of debris."

[¶9.] On appeal, Patituccis argue that both defendants owed them a duty to keep the sidewalk reasonably safe. They also argue that both defendants owed them a duty to warn of the sidewalk's dangerous condition. "The existence of a duty in a negligence action is a question of law subject to de novo review by this Court." *Locke v. Gellhaus*, 2010 S.D. 11, ¶ 11, 778 N.W.2d 594, 597.

*The City*

[¶10.] Patituccis contend that the City's control and concomitant duty is evidenced in several statutes, the 1994 maintenance and encroachment agreement, and the City's acts to improve the sidewalk. Patituccis contend that the City had a

duty to keep the sidewalk reasonably safe even though it was within a state highway right-of-way.

[¶11.]     The City "does not dispute that if it had control over the sidewalk, [it] would be responsible for designing, constructing, maintaining, and repairing the sidewalk." However, the City argues that the State, rather than the City, had control of the sidewalk abutting the highway. The City contends that "without control, [it] cannot be liable for the State's failure to redesign and reconstruct the split-level sidewalk." We agree that municipal control is necessary to impose a municipal duty of care with respect to sidewalks. But we conclude that under the relevant statutes, the City had sufficient control to impose a duty of care.

[¶12.]     A number of statutes vest municipalities with control of sidewalks within their municipal boundaries. SDCL 9-45-1 grants municipalities authority to construct, improve, and repair sidewalks in the municipality. And SDCL 9-30-2 grants municipalities authority to control the use of those sidewalks.[1] Further, SDCL chapter 9-46 grants municipalities broad authority to require improvements that the municipality deems necessary for the sidewalks within its boundaries. Indeed, SDCL 9-46-3 specifically authorizes municipalities to notify landowners to construct, rebuild, or repair sidewalks when the municipality "deems it necessary to construct, rebuild, or repair any sidewalk[.]"[2] Significantly, none of these broad

---

1.    *See also* SDCL 9-30-5, which provides that: "Every municipality shall have power to require the owner of abutting property to remove snow and ice from sidewalks . . . ."

2.    *See also* SDCL 9-46-1 (authorizing municipalities to prescribe the width and type of materials used to construct sidewalks); SDCL 9-46-2 (authorizing
                                                                    (continued . . .)

grants of authority and control are limited when the sidewalk is within a State highway right-of-way in the municipality. This Court has specifically noted that under these statutes, "the legislature has given much authority to municipalities to deal with sidewalks within their boundaries." *City of Sioux Falls v. Murray*, 470 N.W.2d 619, 620 (S.D. 1991). Thus, there is ample authority to conclude that the City had control of sidewalks within its municipal boundaries.[3]

[¶13.] We also observe that the 1994 maintenance and encroachment agreement reflects that the City and State believed the City had control of the sidewalk where Edna fell. Prior to the reconstruction of the highway in 1995, the City and State entered into the 1994 agreement. In the agreement, the City agreed to certain conditions regarding encroachments, utilities, speed limits, parking, curbs, highway access, lighting, and pavement markings for the highway right-of-way. Tellingly, in the recitals, the City and State acknowledged that: "[T]he section of the [highway reconstruction project] within the Municipality . . . is within the legal jurisdiction of the Municipality for traffic regulations and *the control of* building setbacks, zoning, *sidewalks*, utilities, etc." (Emphasis added.)

---

(. . . continued)

municipalities to require the repair of sidewalks and imposing landowner liability for the failure to repair sidewalks as directed by the municipality); SDCL 9-46-4 (authorizing municipalities to do the work or hire the work to be done if the landowner fails to construct, reconstruct, or repair the sidewalk in the manner directed by the municipality); SDCL 9-46-5 (authorizing municipalities to assess adjoining property for the cost of sidewalk construction, reconstruction, or repair).

3. The parties do not argue that the City's duty to keep the sidewalks in a reasonably safe condition (as evidenced by these statutes) was abrogated by the enactment of any subsequent statutes. *Cf. Hohm v. City of Rapid City*, 2008 S.D. 65, 753 N.W.2d 895.

[¶14.] The City acknowledges this language in the 1994 agreement as well as its general statutory authorization to control sidewalks. But the City argues that the State had control of this sidewalk because it was in the State highway right-of-way. The City points out that this highway and sidewalk were built and modified by the State. The City also points out that this sidewalk is within the State highway right-of-way, which is part of the state trunk highway system.[4] Therefore, the City argues that the State had control under SDCL 31-4-14, which provides that "[a]ll marking, surveying, construction, repairing, and maintenance of the state trunk highway system is under the control and supervision" of the State. *See also* SDCL 31-1-5(1) (providing that the state trunk highway system is comprised of highways "controlled and supervised by the [State] Department of Transportation"). The City ultimately contends that the State's control over this state trunk *highway* includes control of the *sidewalks* in the highway right-of-way. We disagree.

[¶15.] The City's argument overlooks the definition of highways within the state trunk system. SDCL 31-1-1 defines those "highway[s]" as "[e]very way or place of whatever nature open to the public . . . for purposes of vehicular travel[.]" Because a city sidewalk is not open to the public for purposes of vehicular travel, the State's control over the vehicular portion of U.S. Highway 16/385, as granted in SDCL 31-4-14 and 31-1-5(1), does not supplant the statutes granting the City control of the sidewalk. As the Connecticut Supreme Court explained:

---

4. The City contends that "[a] majority of cases have defined a sidewalk as a walkway that is part of the street." *See Hohm*, 2008 S.D. 65, ¶ 36, 753 N.W.2d at 909 (Konenkamp, J., concurring specially).

> Ordinarily, [the] duty to keep in repair is imposed on the [State] with respect to the vehicular portion of a trunk-line highway but not with respect to a sidewalk, even though it lies within the limits of a trunk-line highway. Where the state takes over an existing street or highway as a state road, it assumes the responsibility for its use and maintenance for all purposes incident to vehicular traffic, and it leaves undisturbed the existing responsibility of the municipalities for sidewalks and the like.

*Tuckel v. Argraves*, 170 A.2d 895, 896 (Conn. 1961) (internal citations and quotation marks omitted).

[¶16.]     Notwithstanding the foregoing, the City claims that it did not have the "full and complete control" necessary to impose a duty. The City relies on *Locke v. Gellhaus*, 2010 S.D. 11, 778 N.W.2d 594, and *Rapid City v. First National Bank of the Black Hills*, 79 S.D. 38, 107 N.W.2d 693 (1961) [hereinafter *First Nat'l Bank*]. The City points out that in those cases, this Court found a municipal duty because municipalities had "full and complete control" of the public sidewalks within their corporate limits.

> A municipality has full and complete control over the public sidewalks within its corporate limits. Consequently, a municipality is charged with the affirmative duty of keeping its sidewalks in a reasonably safe condition for public travel, and is liable for injuries caused by its neglect.

*Locke*, 2010 S.D. 11, ¶ 15, 778 N.W.2d at 599 (quoting *First Nat'l Bank*, 79 S.D. at 39-40, 107 N.W.2d at 694). The City contends that it did not have that "full and complete control" because it could not repair or act with respect to this sidewalk without the State's consent. The City contends that the need for State consent is demonstrated in the 1994 maintenance and encroachment agreement, a City resolution to improve the sidewalk at issue, City council minutes, and a City grant application. The record does not support the City's contention.

[¶17.]     The 1994 agreement did require the State's approval of the City's designated speed limit, installation of curbs, changes to signal timing, and addition of new access points and encroachments.  But the agreement did not require the State's approval to redesign, reconstruct, or repair the sidewalk.  Similarly, in a City sidewalk resolution, the City "recognize[d] the sidewalks on Main Street [were] in need of improvement and repair[.]"  The City then resolved "that said sidewalks *shall be* repaired and improved to ensure the safety of citizens and visitors[.]"  (Emphasis added.)  This directive was not qualified as being subject to State approval.  Additionally, the council minutes and the grant application reflect that the City was only seeking approval for State funding for the improvements.  Those documents do not reflect that the City needed the State's approval to repair the sidewalks.  The City's evidence does not reflect that it lacked full and complete control of the sidewalk.

[¶18.]     We conclude that the City had sufficient control of the sidewalk to charge it "with the affirmative duty of keeping its sidewalks in a reasonably safe condition for public travel, and [it] is liable for injuries caused by its neglect."  *See Locke*, 2010 S.D. 11, ¶ 15, 778 N.W.2d at 599.  The circuit court erred in concluding otherwise.

[¶19.]     Patituccis also argue that the City had a duty to warn of the split-level nature of the sidewalk.[5]  The general duty to keep property in a reasonably safe

---

5.     The City contends that Patituccis' complaint and Edna's answers to interrogatories limited Patituccis' claim to negligent design.  Therefore, the City contends that its failure to maintain the sidewalk and failure to warn of known, dangerous conditions are not at issue.  We disagree.  Patituccis'

(continued . . .)

condition includes the duty "to warn of concealed, dangerous conditions[.]" *Luther v. City of Winner*, 2004 S.D. 1, ¶ 19, 674 N.W.2d 339, 347. Because the City owed Patituccis the duty to keep the sidewalk reasonably safe, it also owed them a duty to warn if the sidewalk was in a "concealed, dangerous condition[ ] known to the [City.]" *See id.*

[¶20.] The City, however, argues that the split-level sidewalk was a known and obvious danger, and therefore, it had no duty to warn. The question whether a sidewalk is in a known or obvious dangerous condition generally involves a question of fact. *See id.* ¶ 21 (stating that there was a genuine issue of material fact whether the condition of the sidewalk was in "an unreasonably dangerous condition such that the [municipality] had a duty to warn" and whether the sidewalk's condition was "so obvious that warning was unnecessary"). Under the record developed to this point, the known or obvious danger argument involves a question of fact for the circuit court to resolve on remand.

---

(. . . continued)
> complaint alleged negligence in a broad sense: that the sidewalk was "in an unsafe condition creating a hazardous and dangerous threat to the safety of the public[,]" the City "had a duty to construct and maintain the city sidewalks in a safe condition[,]" and the City "negligently and carelessly allowed the unsafe sidewalk to remain as a hazard and threat to the safety of the public." Edna's answers to interrogatories also asserted negligence in a broad sense: Edna claimed that the sidewalk was unsafe and she "didn't realize that the sidewalk was split level." The complaint and Edna's answers were sufficient under notice pleading to permit claims of negligence beyond negligent design. *See Gruhlke v. Sioux Empire Fed. Credit Union, Inc.*, 2008 S.D. 89, ¶ 17, 756 N.W.2d 399, 409 (quoting SDCL 15-6-8(a)(1)) ("[A] complaint need only contain 'a short and plain statement of the claim showing that the pleader is entitled to relief.'").

*Granite Sports*

[¶21.] Patituccis argue that the court erred in granting summary judgment for Granite Sports. Patituccis contend that Granite Sports had a duty to maintain, repair, and warn of dangerous conditions concerning the sidewalk.

[¶22.] Under common law, landowners abutting public sidewalks generally do not owe a duty to keep them in a reasonably safe condition. *Locke*, 2010 S.D. 11, ¶ 15, 778 N.W.2d at 599. An exception exists when the abutting owner "creates or maintains an excavation or other artificial condition on the sidewalk." *Id.; see also First Nat'l Bank*, 79 S.D. at 40, 107 N.W.2d at 694. The exception, known as the "special use" doctrine, is described as follows:

> If the abutter makes special use of the sidewalk, he or she owes a duty to maintain it in a reasonably safe condition for pedestrians lawfully using it, and must exercise reasonable care to guard the public from injury. If the abutter does not, he or she becomes liable to any persons injured as a proximate result of his or her negligence. The abutter's liability for negligence is not affected by the fact that the municipality has a duty to perform and may also be liable. . . . Liability results from the fact that the abutter creates or maintains the thing from which the injury results, and not because he or she owns the abutting property.

*Locke*, 2010 S.D. 11, ¶ 16, 778 N.W.2d at 599 (citation omitted).

[¶23.] Patituccis acknowledge this rule and exception. However, they failed to meet their summary judgment burden of identifying facts suggesting that Granite Sports owed a duty because of its special use of the sidewalk. On the contrary, in their brief to the circuit court, Patituccis acknowledged that "the evidence does not suggest that the 'special use' doctrine applies[.]" On this record,

Patituccis may not assert a claim that Granite Sports owed a common-law duty to maintain the sidewalk in a reasonably safe condition.

[¶24.]    Property owners may also owe a statutory duty to keep abutting sidewalks reasonably safe. However, the statutory duty is conditional. SDCL 9-46-2 provides that abutting landowners may be liable to a municipality for negligent repair if the abutting owner resides on the premises. Owners who do not reside on the premises may be liable to a municipality for negligence if the owner fails to repair the sidewalk after being notified by a municipality to do so.

> Any owner of real property who fails to keep in repair the sidewalks in front of or along such property if he resides thereon, or if he does not reside thereon, to repair the same forthwith when notified, is liable to the municipality for any damage caused by such neglect. The duty of the municipality to notify the nonresident owner does not affect the liability of the owner for any injury proximately caused by the negligent construction or repair of the sidewalk. The failure of the municipality to notify the nonresident owner does not result in any liability on the part of the municipality for any injury proximately caused by the negligent construction or repair of the sidewalk.

SDCL 9-46-2.

[¶25.]    Patituccis argue that Granite Sports owed them a duty of care under this statute. The argument is misplaced. SDCL 9-46-2 "makes the abutting owner secondarily liable to the municipality for damages caused by the owner's failure to repair." *See First Nat'l Bank*, 79 S.D. at 43, 107 N.W.2d at 695 (discussing the predecessor to SDCL 9-46-2); *see also Locke*, 2010 S.D. 11, ¶ 12, 778 N.W.2d at 597. Under this statute, Granite Sports could only be secondarily liable to the City by means of a cross-claim or a later suit if the City were found liable. *See, e.g., First Nat'l Bank*, 79 S.D. 38, 107 N.W.2d 693 (involving a municipality seeking indemnity

from the abutting property owner under the predecessor to SDCL 9-46-2, after the municipality was deemed liable to a pedestrian injured on the sidewalk in an earlier suit). Patituccis have not, however, demonstrated how Granite Sports' liability to the City creates a duty of care from Granite Sports to the public. Granite Sports owed no statutory duty to Patituccis under SDCL 9-46-2.[6]

[¶26.] Patituccis finally argue that Granite Sports had a duty to warn pedestrians of the dangerous nature of the split-level sidewalk. "The duty to warn is a subpart of the duty to keep the property reasonably safe[.]" *Janis v. Nash Finch Co.*, 2010 S.D. 27, ¶ 12, 780 N.W.2d 497, 501 (quoting *Mitchell v. Ankney*, 396 N.W.2d 312, 314 (S.D. 1986)); *see also Luther*, 2004 S.D. 1, ¶ 19, 674 N.W.2d at 347. Because Granite Sports did not have the general duty to keep the sidewalk reasonably safe in this case, it did not have the lesser included duty to warn. The circuit court did not err in granting summary judgment for Granite Sports.

[¶27.] We affirm the summary judgment granted in favor of Granite Sports. We reverse the summary judgment granted in favor of the City and remand for further proceedings.

---

6. Patituccis also argue that Granite Sports had general "premises liability" to Patituccis because, under SDCL 43-16-3, Granite Sports was presumed to own the property to the center of the street, which would include the sidewalk. *See* SDCL 43-16-3 ("An owner of land bounded by a road or street is presumed to own to the center of the way, but the contrary may be shown."). However, in responding to Granite Sports' statement of material facts in support of summary judgment, Patituccis stated that it was "[u]ndisputed" that Granite Sports did not own the sidewalk. Therefore, Patituccis waived their right to now argue that Granite Sports owned the sidewalk.

#26516

[¶28.] GILBERTSON, Chief Justice, and KONENKAMP, SEVERSON and WILBUR, Justices, concur.

-13-